IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ALPHA GAS AND ELECTRIC, LLC, a New York limited liability company, and JOHN DOE CORPORATION<br><br>    Defendant. | Civil File No.<br><br>**COMPLAINT – CLASS ACTION** |

**Preliminary Statement**

1. As the Supreme Court explained at the end of its term last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. The Plaintiff Andrew Perrong alleges that Alpha Gas and Electric, LLC ("Alpha") retained a vendor, John Doe Corporation ("John Doe"), who made unsolicited pre-recorded telemarketing calls to telephone numbers listed on the National Do Not Call Registry, like Mr. Perrong's, which is prohibited by the TCPA.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5. Plaintiff Andrew Perrong is an individual residing in Pennsylvania.

6. Defendant Alpha Gas and Electric, LLC is a New York company with a principal place of business in this District.

7. Defendant John Doe Corporation is a vendor for Alpha Gas that makes telemarketing calls for them. John Doe regularly engages in business in this District, including signing an agreement with Alpha Gas in this District, as it did for this telemarketing campaign.

### Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over Defendant it is incorporated in New York and headquartered in this District, and because the wrongful communications giving rise to this action were directed by Defendant from this District.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because Alpha Gas resides in this District.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA prohibits prerecorded telemarketing calls to cellular telephones and numbers for which the called party is charged for the call</u>

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 ¶ 165 (2003).

16.     In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

17.     Alpha Gas is an electric generation supplier that attempts to sell their residential electric services to residents of various states, including Pennsylvania.

18.     To generate business through sales, Alpha Gas relies on telemarketing.

19.     Alpha Gas has relied on third parties to engage in that telemarketing, including John Doe.

20.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Plaintiff's telephone number ("Number"), (215)-947-XXXX, is registered to a service for which the called party is charged for the call.

22.     Plaintiff received Alpha's prerecorded call on the Number.

4

23. That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

24. The service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

25. The service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

26. The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any call placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

27. On February 15, 2021, the Plaintiff received a prerecorded call from the spoofed caller ID 215-412-1586 that stated:

> *Hello. This is an apology call from your utility company. It has to our knowledge that you have been paying more than your consumption from previous few months. You will be reimbursed by fifty dollar [sic], along with thirty-five percent discount on your electric and gas bills. Please press 1 to get your reimbursement.*

28. The caller was not identified on the call.

29. To investigate who had contacted him, at the end of the prerecorded message, the Plaintiff followed the instructions in the recording, and pressed "1" to be transferred.

30. During the call, the Plaintiff spoke to an agent named "Kevin Victor" who, among other things, at first claimed to be with PECO before revealing that he was calling for Alpha.

31. However, Alpha is not believed to have physically dialed the call and instead used a John Doe vendor.

32. Other consumers have complained about receiving misleading, unsolicited, telemarketing calls from Defendant. E.g., www.bbb.org/ny/kasert/profile/energy-service-company/alpha-gas-and-electric-llc-01210138671/complaints#0 (last visited June 18, 2021).

33. Defendants' calls were not necessitated by an emergency.

34. Plaintiff's privacy has been violated by the above-described telemarketing robocall from, or on behalf of, Defendants. The call was an annoying, harassing, nuisance. The Plaintiff was also charged for the call.

35. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

### Alpha Gas's Liability for John Doe's Conduct

36. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

37. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

38. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically

recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

39. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Alpha Gas may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

41. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing

7

> scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

42. Alpha Gas knowingly and actively accepted business from John Doe that originated through violations of the TCPA.

43. Alpha Gas, through access to its third-party verification system, had the ability to identify the fact that John Doe was calling individuals on the National Do Not Call Registry.

44. Indeed, despite the receipt of prior complaints from individuals related to telemarketing calls, Alpha Gas continued to do business with John Doe.

45. Moreover, Alpha Gas maintained interim control over the actions of the party that made the call.

46. For example, Alpha Gas gave interim instructions to John Doe by providing (a) the states that they were permitted to call and (b) the script that John Doe would have to use.

47. Alpha Gas also required John Doe to use its third-party verification system to enroll new customers, granting it the ability "to enter consumer information into the seller's sales or customer systems."

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

49. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Class of all other persons or entities similarly situated throughout the United States.

50. The Class of persons Plaintiff proposes to represent is tentatively defined as:

Plaintiff Perrong and all persons within the United States: (1) to whose cellular telephone number or number for which they were charged for the call, Alpha, or a third party on their behalf, placed a telemarketing call (2) within the four years prior to the filing of the Complaint (3) using an artificial or prerecorded voice.

51. Excluded from the Class is counsel, the Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The Class as defined above are identifiable through phone records, phone number databases, and business records of Defendant.

53. Based on the *en masse* nature of telemarketing, the potential members of the Class likely number at least in the thousands.

54. Individual joinder of these persons is impracticable.

55. The Plaintiff is a member of the Class.

56. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Defendant used an artificial or prerecorded voice to make calls to the members of the Class;

    (b) whether Defendant made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

    (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

57. Plaintiff's claims are typical of the claims of members of the Class.

58. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

59. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

60. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227(b))

61. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

62. The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial or prerecorded voice to Plaintiff and Class members' telephones.

63. The Defendant's violations were negligent, willful, or knowing.

64. As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class are entitled to an award of between $500 and $1,500 in damages for each and every call sent.

65. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending artificial or prerecorded voice calls, except for emergency purposes, to any cellular telephone number or number for which the called party is charged for the calls in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant's and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending artificial or prerecorded calls, except for emergency purposes, to any cellular telephone number or number for which the called party is charged for the calls in the future.

F.  An award to Plaintiff and the Class of damages, as allowed by law; and

G.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman
KAUFMAN PA
400 Northwest 26th Street
Miami, Florida 33127
305-469-5881
kaufman@kaufmanpa.com

*Attorney for Plaintiff and proposed class*